**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

G.M. SIGN, INC., an Illinois corporation,      )
individually and as the representative of a    )
class of similarly-situated persons,        )
                                   )    No. 09 CV 0965
              Plaintiff,     )
     v.                           )    Honorable Judge Virginia Kendall
                                     )
SILVERMAN ENTERPRISES, LLC,      )
                                     )
              Defendant.    )

**INDEX TO EXHIBITS TO
PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

| ***DESCRIPTION*** | ***EXHIBIT LETTER*** |
|---|:---:|
| Faxes attached to Plaintiff's Complaint as Exhibit A | A |
| *Rudgayzer & Gratt v. Enine, Inc.,*<br>4 Misc.3d 4 (N.Y. App. Apr. 14, 2004) | B |
| *Schumacher Fin. Svcs., Inc. v. Steckelberg,*<br>03 AC-8706 Y CV (Mo. Cir. Ct., Oct. 14, 2003) | C |
| *Micro Engineering v. St Louis Ass'n of Credit Mgmt., Inc.,*<br>02 AC 8238 X CV (Mo. Cir. Ct., Aug. 13, 2002) | D |
| *Harjoe v. Colonial Life & Accident Ins. Co.,*<br>02 CC-1983, at p. 3 (Mo. Cir. Ct. Aug. 29, 2002) | E |
| *CE Design, Ltd. v. Letrix USA, Inc.,*<br>06 CH 26834 (Ill. Cir. Ct. Sept 11, 2007) | F |
| *CE Design, Ltd. v. Peripheral Solutions,*<br>04 L 725 (Ill. Cir. Ct. (Lake County) March 8, 2005) | G |
| *Eclipse Mfg. Co. v. T.J. Copy Products, Inc.,*<br>03 CH 1344 (Ill. Cir. Ct. (Lake County) Apr. 23, 2004) | H |

**EXHIBIT A**

# *Get Paid for Faxes!*

Do you ever receive fax advertisements? Would you like to get paid for receiving fax advertisements? If so, then you should join the **Get Paid for Faxes Program**.

The **Get Paid for Faxes Program** will compensate you by paying a $0.50 bounty for each unique fax advertisement that you submit. To qualify for the $0.50 bounty, each submitted fax must 1) be an advertisement for a product or service, a newsletter, news release, or press release; 2) have been originally transmitted to you within the past 45 days; and 3) not have been submitted by you previously. Payment will not be made for any stock or investment faxes.

To enroll in this program, simply complete the contact information section below and fax this page to (888) 831-3067.

Contact Name: _____

Business Name: _____

Make Check Payable To (please check one box):    ☐ Contact    ☐ Business

Address: _____

City: _____ State: _____ Zip: _____

Telephone #: _____ Fax #: _____

Email: _____

Signature: _____ Date: _____

To submit your faxes for payment, simply write your name and phone number on the received fax, and fax it to (888) 831-3067.

*If you would like to be permanently removed from our fax list, please call toll free (802) 647-6708 and enter your fax number when prompted, or send a toll free fax to (888) 831-3067 with the fax number you wish to be removed clearly indicated on the page. In compliance with FCC regulations, failure to comply with your fax number removal request within 30-days is unlawful.*

We reserve the right to modify, suspend or terminate this program at any time.

# Get Paid for Faxes!

Do you ever receive fax advertisements?  Would you like to get paid for receiving fax advertisements?  If so, then you should join the **Get Paid for Faxes Program.**

The **Get Paid for Faxes Program** will compensate you by paying a $0.50 bounty for each unique fax advertisement that you submit.  To qualify for the $0.50 bounty, each submitted fax must 1) be an advertisement for a product or service, a newsletter, news release, or press release; 2) have been originally transmitted to you within the past 45 days; and 3) not have been submitted by you previously. Payment will not be made for any stock or investment faxes.

To enroll in this program, simply complete the contact information section below and fax this page to (888) 831-3067.

Contact Name: _____

Business Name: _____

Make Check Payable To (please check one box):    ☐ Contact    ☐ Business

Address: _____

City: _____ State: _____ Zip: _____.

Telephone #: _____ Fax #: _____

Email: _____

Signature: _____ Date: _____

To submit your faxes for payment, simply write your name and phone number on the received fax, and fax it to (888) 831-3067.

*If you would like to be permanently removed from our fax list, please call toll free (800) 647-6708 and enter your fax number when prompted, or send a toll free fax to (888) 831-3067 with the fax number you wish to be removed clearly indicated on the page.  In compliance with FCC regulations, failure to comply with your fax number removal request within 30-days is unlawful.*

We reserve the right to modify, suspend or terminate this program at any time.

**EXHIBIT B**



4 Misc.3d 4, 779 N.Y.S.2d 882, 2004 N.Y. Slip Op. 24131
**(Cite as: 4 Misc.3d 4)**

▷
Rudgayzer & Gratt v. Enine, Inc.
N.Y.Sup.App.Term,2004.

Supreme Court, Appellate Term, New York.
2nd and 11th Judicial Districts.
RUDGAYZER & GRATT, Appellant,
v.
ENINE, INC. and Fax.Com, Inc., Respondents.
Harold Bonime, Appellant,
Perry Johnson, Inc., Respondent.
April 14, 2004.

**Background:** Two recipients of unsolicited facsimile transmissions brought separate actions against senders under federal Telephone Consumer Protection Act (TCPA). In first action, the Civil Court, Kings County, D. Silber, J., 193 Misc.2d 449, 749 N.Y.S.2d 855, denied recipient's motion for summary judgment and dismissed the complaint. In second action, the Civil Court, Kings County, K. Rothenberg, J., granted sender's motion for summary judgment. Recipients appealed.

**Holdings:** The Supreme Court, Appellate Term, held that:

(1) transmission that recommended a described stock and gave subscription information for future issues of a newsletter was an "unsolicited advertisement" prohibited by the TCPA;

(2) transmission mentioning sender's company name, connecting sender to the contents of the fax, and inviting calls for further information advertised "commercial availability or quality of services" within meaning of TCPA; and

(3) TCPA's prohibition on unsolicited facsimile advertising did not violate First Amendment free speech protections.

Reversed and remanded.
West Headnotes
**[1] Telecommunications 372 ⬡888**

372 Telecommunications
    372III Telephones
        372III(F) Telephone Service
            372k888 k. Advertising, Canvassing and Soliciting; Telemarketing. Most Cited Cases
        (Formerly 92Hk7 Consumer Protection)
Facsimile transmission that recommended a described stock and gave subscription information for future issues of a newsletter was an "unsolicited advertisement" prohibited by the Telephone Consumer Protection Act (TCPA); statute proposed a commercial transaction, for the stock, the newsletter or both. Communications Act of 1934, § 227(a)(4), as amended, 47 U.S.C.A. § 227(a)(4).

**[2] Telecommunications 372 ⬡888**

372 Telecommunications
    372III Telephones
        372III(F) Telephone Service
            372k888 k. Advertising, Canvassing and Soliciting; Telemarketing. Most Cited Cases
        (Formerly 92Hk7 Consumer Protection)
Facsimile transmission mentioning sender's company name, connecting sender to the contents of the fax, and inviting calls for further information advertised "commercial availability or quality of services" within meaning of the Telephone Consumer Protection Act (TCPA); fax pitched a product or service under the guise of providing information about it, and therefore proposes a commercial transaction, although the proposal in so many words would occur when the fax recipient called the sender. Communications Act of 1934, § 227(a)(4), as amended, 47 U.S.C.A. § 227(a)(4).

**[3] Constitutional Law 92 ⬡1640**

92 Constitutional Law
    92XVIII Freedom of Speech, Expression, and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



4 Misc.3d 4, 779 N.Y.S.2d 882, 2004 N.Y. Slip Op. 24131
**(Cite as: 4 Misc.3d 4)**

Press
    92XVIII(E) Advertising and Signs
        92XVIII(E)2 Advertising
            92k1640 k. In General. Most Cited
Cases
    (Formerly 92k90.3)

**Telecommunications 372 ⇐⇒730**

372 Telecommunications
    372III Telephones
        372III(A) In General
            372k727 Constitutional and Statutory
Provisions
            372k730 k. Validity. Most Cited Cases
    (Formerly 92Hk2.1 Consumer Protection)
Telephone Consumer Protection Act's (TCPA)
prohibition on unsolicited facsimile advertising did
not violate First Amendment free speech
protections; TCPA did not ban any advertising
content, left other means of conveying the
information open to the advertiser, and furthered
governmental interests in preventing cost-shifting
from advertisers to unwilling recipients of their
materials and preventing fax owners from being
deprived of the use of their property by incoming
advertising faxes. U.S.C.A. Const.Amend. 1;
Communications Act of 1934, § 227(b)(3), as
amended, 47 U.S.C.A. § 227(b)(3).

**[4] Constitutional Law 92 ⇐⇒1537**

92 Constitutional Law
    92XVIII Freedom of Speech, Expression, and
Press
        92XVIII(A) In General
            92XVIII(A)2 Commercial Speech in
General
            92k1537 k. Difference in Protection
Given to Other Speech. Most Cited Cases
    (Formerly 92k90.2)
Constitution accords a lesser protection to
commercial speech than to other constitutionally
guaranteed expression. U.S.C.A. Const.Amend. 1.

**[5] Constitutional Law 92 ⇐⇒1541**

92 Constitutional Law
    92XVIII Freedom of Speech, Expression, and

Press
    92XVIII(A) In General
        92XVIII(A)2 Commercial Speech in
General
            92k1541 k. Reasonableness;
Relationship to Governmental Interest. Most Cited
Cases
    (Formerly 92k90.2)
Free speech protection available for particular
commercial expression turns on the nature both of
the expression and of the governmental interests
served by its regulation. U.S.C.A. Const.Amend. 1.

**[6] Constitutional Law 92 ⇐⇒1541**

92 Constitutional Law
    92XVIII Freedom of Speech, Expression, and
Press
        92XVIII(A) In General
            92XVIII(A)2 Commercial Speech in
General
            92k1541 k. Reasonableness;
Relationship to Governmental Interest. Most Cited
Cases
    (Formerly 92k90.2)
To meet burden of showing that restriction on
commercial speech does not violate constitutional
free speech protections, the State or, if the issue
arises in private litigation, the party seeking to
uphold the restriction must demonstrate that the
harms it recites are real and that its restriction will
in fact alleviate them to a material degree.
U.S.C.A. Const.Amend. 1.
West CodenotesNegative Treatment Reconsidered
47 U.S.C.A. § 227

**\*\*884 \*6** Todd C. Bank, Kew Gardens, for
Rudgayzer & Gratt, appellant.
Cozen O'Connor, New York City (Theresa Murphy
and Julie Negovan of counsel), for Enine, Inc. and
another, respondents.
Roslynn R. Mauskopf, United States Attorney,
Washington, D.C. (Robert D. McCallum, Jr., Mark
B. Stern and Sharon Swingle of counsel), for United
States of America, amicus curiae.

Present: ARONIN, J.P., PATTERSON and
GOLIA, JJ.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



4 Misc.3d 4                                                                                          Page 3

4 Misc.3d 4, 779 N.Y.S.2d 882, 2004 N.Y. Slip Op. 24131
(Cite as: 4 Misc.3d 4)

*4 Appeal by plaintiff Rudgayzer & Gratt from an order of the Civil Court, Kings County (D. Silber, J.), entered October 1, 2002, denying its motion for summary judgment and, upon a search of the record, dismissing its complaint (193 Misc.2d 449, 749 N.Y.S.2d 855) (No. 2002-1700 K C, "Action No. 1").

Appeal by plaintiff Harold Bonime from an order of the Civil Court, Kings County (K. Rothenberg, J.), entered November 8, 2002, granting defendant's motion for summary judgment dismissing the complaint (No. 2002-1740 K C; "Action No. 2").

On the court's own motion, the appeals are consolidated for purposes of disposition.

Order entered October 1, 2002 unanimously reversed without costs, plaintiff's motion for summary judgment granted on the issue of liability only and matter remanded to the court below for an assessment of damages (Action No. 1).

Order entered November 8, 2002 unanimously reversed without costs, defendant's motion for summary judgment denied and, upon a search of the record, summary judgment granted to plaintiff on the issue of liability only and matter remanded to the court below for an assessment of damages (Action No. 2).

Plaintiffs commenced actions pursuant to the Telephone Consumer Protection Act (TCPA) (47 USC § 227[b][3] ), complaining that defendants in each action transmitted unsolicited advertisements to their facsimile (fax) machines without their authorization, in violation of the TCPA.

The TCPA provides, in pertinent part, that "It shall be unlawful for any person within the United States . .. to use any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine ..." (47 USC § 227[b][1][C] ).

The TCPA, 47 USC § 227(a)(4), defines " unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which *7 is transmitted to any person without that person's prior express invitation or permission."

Plaintiffs each sought treble damages of $1,500 as provided at 47 USC § 227(b)(3) on the grounds that the transmissions were "willful or knowing." Plaintiff in Action No. 1 and defendant in Action No. 2 each moved for summary judgment. The courts below dismissed both actions on the ground that the TCPA violates the First Amendment to the U.S. Constitution.

**885 [1] The order in Action No. 1 (193 Misc.2d 449, 749 N.Y.S.2d 855), must be reversed, plaintiff's motion for summary judgment granted on the issue of liability and the matter remanded to the court below for an assessment of damages. The fax at issue (although of very poor transmission quality) clearly falls within the TCPA's definition of an " unsolicited advertisement." The fax, sent by defendant Fax.com, Inc. on behalf of defendant Enine, Inc. includes a "strong buy" recommendation for the stock described therein, indicates that Enine, Inc. recommended the stock, gives the stock's price, "Reasons To Own The Stock " and a contact number. The fax also gives subscription information for future issues of the " newsletter." It therefore proposes a commercial transaction, for the stock, the newsletter or both, and falls within the ambit of the statute, as the court below properly concluded.

[2] The order in *Bonime* (Action No. 2), dismissing the action, must also be reversed. The fax at issue has the effect and purpose of advertising, albeit indirectly, defendant's services. Its essential purpose is to propose a commercial transaction, and the TCPA prohibits such unsolicited faxes. We find as a matter of law that the fax falls within the ambit of the TCPA's enforcement provisions as it " advertis[es] the commercial availability or quality of ... services" within the meaning of 47 USC § 227(a)(4). It mentions defendant's company name, connecting defendant to the contents of the fax, and invites calls for further information. The approach may be less direct than "buy Brand X," but it has the purpose and effect of influencing fax recipients to buy services, here, the implementation of ISO 9000 (see *Fashion Boutique of Short Hills, Inc. v.*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



4 Misc.3d 4                                                      Page 4

4 Misc.3d 4, 779 N.Y.S.2d 882, 2004 N.Y. Slip Op. 24131
(Cite as: 4 Misc.3d 4)

*Fendi USA, Inc.*, 314 F.3d 48, 56 [2d Cir.2002] [discussing meaning of "advertising" in trademark enforcement context] ). Defendant's name is before the recipient, and the only logical explanation of this fact is that defendant is somehow associated with ISO 9000, about which defendant expresses positive views. The inescapable conclusion is that the recipient should act by calling for "information."

*8 Certainly, the very fact that the recipient's attention is called to the existence of this new, improved system "advertis[es] the commercial availability or quality of ... services" (47 USC § 227[a][4] ). While there is a fine line between such a fax and one that purely provides information, we hold that the subject fax pitches a product or service under the guise of providing information about it, and therefore proposes a commercial transaction, notwithstanding that the proposal in so many words would occur when the fax recipient calls the sender. This is known in the field as direct response marketing. Moreover, as plaintiff notes, practically any advertising fax could be reformed to simply describe a product or service and provide a contact number, allowing almost any advertiser to circumvent the clear purpose of the TCPA-prevention of cost-shifting from advertisers to unwilling fax recipients and preventing deprivation of use of their own fax machines by barring unsolicited commercial advertising faxes.
For these reasons, we hold that the fax in Action No. 2 falls within the ambit of the statute, and defendant's motion for summary judgment should have been denied.

In reaching this determination we do not limit our scrutiny to the four corners of the fax. Rather, such factors as who the sender is, as well as his motives, purposes and intentions for sending the fax, are all relevant. It is possible that faxes textually conveying the same ideas or even faxes that are facially identical could fall inside or outside the TCPA's ambit depending upon considerations outside the content of **886 the fax itself, such as the identity of the sender as a commercial or professional entity (versus, for example, a public interest organization or political entity) and the nature of the sender's business (*compare, e.g., In re Primus,* 436 U.S. 412, 98 S.Ct. 1893, 56 L.Ed.2d 417 [1978] [client solicitation letter sent on behalf

of a civil liberties organization seeking plaintiffs for a civil liberties lawsuit was not solicitation for pecuniary gain in violation of state statute] *with Florida Bar v. Went For It, Inc.,* 515 U.S. 618, 634, 115 S.Ct. 2371, 132 L.Ed.2d 541 [1995] [upholding 30-day ban on direct mail solicitation of accident victims and noting the "many dimensions" that speech by professionals may have] ). A civil liberties organization and a personal injury attorney might conceivably send identical communications that the recipient has legal rights that the communicating entity wishes to uphold; the former is entitled to the full ambit of First Amendment protection (*Primus,* 436 U.S. at 431, 98 S.Ct. 1893), while the latter may be regulated as commercial speech, as discussed below (*Florida Bar,* 515 U.S. at 635, 115 S.Ct. 2371). Moreover, a fax depicting a *9 car with its brand name may be considered a provision of information if sent by one's college-age child (even though a commercial transaction is almost certainly being proposed), but an unsolicited advertisement if sent by an auto dealership.

Moreover, upon a search of the record (*Merritt Hill Vineyards Inc. v. Windy Heights Vineyard, Inc.,* 61 N.Y.2d 106, 472 N.Y.S.2d 592, 460 N.E.2d 1077 [1984] ), we grant summary judgment to plaintiff in Action No. 2 upon liability only, and remand the matter to the court below for a determination of damages.

However, it should be noted that plaintiff in Action No. 2 seeks, in part, equitable relief in the form of an injunction barring defendant from sending further faxes. The remedies available pursuant to the TCPA are limited to those "otherwise permitted by the laws or rules of court of a State" (47 USC § 227[b][3] ), and plaintiff's forum, the New York City Civil Court, does not have equity jurisdiction to grant, as a form of primary relief, the injunction plaintiff seeks (CCA 202).

[3] Turning to the question of the statute's constitutionality, the parties in both actions agree that the TCPA restricts commercial speech, i.e., " expression related solely to the economic interests of the speaker and its audience"(*Central Hudson Gas & Elec. Corp. v. Public Serv. Commn. of N.Y.,* 447 U.S. 557, 561, 100 S.Ct. 2343, 65 L.Ed.2d 341

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



4 Misc.3d 4, 779 N.Y.S.2d 882, 2004 N.Y. Slip Op. 24131
**(Cite as: 4 Misc.3d 4)**

[1980] ), specifically "unsolicited advertisement," as defined in the TCPA (47 USC § 227[a][4] ).

[4][5] The Supreme Court has recognized "the ' commonsense' distinction between speech proposing a commercial transaction, which occurs in an area traditionally subject to government regulation, and other varieties of speech.... The Constitution therefore accords a lesser protection to commercial speech than to other constitutionally guaranteed expression. The protection available for particular commercial expression turns on the nature both of the expression and of the governmental interests served by its regulation"( *Central Hudson,* 447 U.S. at 562-563, 100 S.Ct. 2343 [internal citations and quotations omitted] ).

The result is a four-part test, to be employed to analyze the constitutionality of restrictions upon commercial speech:
"At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not **\*10** be misleading. Next, we ask whether the asserted governmental interest is **\*\*887** substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest"( *id.* at 566, 100 S.Ct. 2343).

[6] To meet this burden, the State (or, if the issue arises in private litigation, the party seeking to uphold the restriction) (*Bolger v. Youngs Drug Prods. Corp.,* 463 U.S. 60, 71 n. 20, 103 S.Ct. 2875, 77 L.Ed.2d 469 [1983] )"must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree"(*Florida Bar,* 515 U.S. at 626, 115 S.Ct. 2371, quoting *Edenfield v. Fane,* 507 U.S. 761, 770-771, 113 S.Ct. 1792, 123 L.Ed.2d 543 [1993] ).

Defendants and both courts below relied upon the subsequently reversed *Missouri ex rel. Nixon v. American Blast Fax, Inc.,* 196 F.Supp.2d 920 [E.D. Mo. 2002],*revd.*323 F.3d 649 [8th Cir.2003],

equating the TCPA provisions at issue with the outright bans on designated content of commercial speech invalidated in recent Supreme Court cases including *Rubin v. Coors Brewing Co.,* 514 U.S. 476, 115 S.Ct. 1585, 131 L.Ed.2d 532 [1995]; *44 Liquormart, Inc. v. Rhode Island,* 517 U.S. 484, 116 S.Ct. 1495, 134 L.Ed.2d 711 [1996]; *Lorillard Tobacco Co. v. Reilly,* 533 U.S. 525, 121 S.Ct. 2404, 150 L.Ed.2d 532 [2001], and, most recently, *Thompson v. Western States Med. Ctr.,* 535 U.S. 357, 122 S.Ct. 1497, 152 L.Ed.2d 563 [2002] (*see Nixon,* 196 F.Supp.2d at 927; *Rudgayzer & Gratt v. Enine, Inc.,* 193 Misc.2d 449, 451, 749 N.Y.S.2d 855 [Civ. Ct., Kings County 2002] ). We do not find this reasoning persuasive, and we note that the United States Court of Appeals for the Eighth Circuit, reversing*Nixon,* 323 F.3d 649, also did not accept this argument.

The restrictions upon commercial speech at issue in the foregoing Supreme Court cases barred the very utterance of presumptively true product-related information. In contrast, the TCPA does not ban any advertising content at all. It simply forbids its transmission by fax to an unwilling recipient, while leaving open to the advertiser all other means of conveying the information (*Nixon,* 323 F.3d at 659; *see also Florida Bar,* 515 U.S. 618, 633-634, 115 S.Ct. 2371, 132 L.Ed.2d 541 [noting, in favor of upholding a 30-day ban on direct solicitation of accident victims, the wide variety of communication channels left open to lawyers seeking clients] ). Furthermore, and significantly, the evils the TCPA seeks to address, shifting of advertising costs to recipients and depriving them of use of their own equipment, are brought about by the act of the fax transmission itself, not by some posited remote result of that transmission (*Nixon,* 323 F.3d at 660).

**\*11** While consistently invalidating bans on commercial speech intended to indirectly address some more remote issue, the Supreme Court has nevertheless continued to apply the *Central Hudson* analysis in evaluating the constitutionality of restrictions upon commercial speech. Applying the factors noted in *Central Hudson* and reaffirmed in its progeny, we find that the TCPA restrictions upon transmission of unsolicited advertisements by facsimile are constitutional since the statute

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



4 Misc.3d 4, 779 N.Y.S.2d 882, 2004 N.Y. Slip Op. 24131
(Cite as: 4 Misc.3d 4)

addresses a substantial government interest, materially advances that interest, and is not more extensive than necessary to serve that interest ( *Central Hudson,* 447 U.S. at 566, 100 S.Ct. 2343).

All concerned agree that the government interests at stake, as expressed by plaintiffs in these actions (*see generally Edenfield,* 507 U.S. at 770, 113 S.Ct. 1792), are preventing cost-shifting from advertisers **888 to unwilling recipients of their materials and preventing fax owners from being deprived of the use of their property by incoming advertising faxes. Like the direct client solicitations at issue in *Florida Bar,* 515 U.S. 618, 115 S.Ct. 2371, 132 L.Ed.2d 541, this harm is accomplished through the very act of transmitting such a fax. The regulation at issue here, like the solicitation ban in *Florida Bar,* directly addresses this harm (*see Nixon,* 323 F.3d at 660).

Plaintiffs have met their burden of establishing that the interest in addressing the stated harms is substantial (*Central Hudson,* 447 U.S. at 564, 100 S.Ct. 2343). They submitted evidence that in considering the provisions at issue here, Congress received testimony both that the numbers of such unwanted advertising faxes was substantially increasing, and that recipients must pay for paper and toner, and incur other costs, in receiving the unwanted advertising. While the testimony indicated that this cost could be as low as three cents per page, any appropriation of another's property without consent is abhorrent to the American idea of property rights regardless of the value of the property involved (*see Phillips v. Washington Legal Found.,* 524 U.S. 156, 169-170, 118 S.Ct. 1925, 141 L.Ed.2d 174 [1998] ["We have never held that a physical item is not 'property' simply because it lacks a positive economic or market value"]; *Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 [1982] [permanent physical occupation of property, no matter how small in area or minimal in economic impact, is a taking]; Hearing Before the Subcommittee on Telecommunication & Finance of the House Energy and Commerce Commn. [H.R. 1304/H.R. 1305], 102nd Cong., 1st Sess. 2 [1991] ). Congress also noted the centrality of the fax machine to modern

business communications (Report to Accompany H.R. 1304, H.R. Rep. No. 102-317, at 10). While defendants*12 in both actions dismiss these considerations as minor and argue that Congress gave them little consideration prior to enacting the TCPA fax provisions, the First Amendment does not require the compilation of exhaustive statistical and empirical reports to establish a substantial interest; "restrictions based solely on history, consensus and 'simple common sense' " have been upheld (*see Florida Bar,* 515 U.S. at 628, 115 S.Ct. 2371; *Nixon,* 323 F.3d at 656). The shifting of costs from fax advertisers to recipients and deprivation of use of their property, at whatever level, is unavoidable, and Congress was entitled to forbid this interference based on the factors cited above.

Congress was also entitled to find that unsolicited advertising faxes were responsible for the vast majority of the offenses to its cited interests, and thus to restrict the scope of regulation to such faxes. As in the present case, the United States Court of Appeals for the Ninth Circuit noted, in its opinion upholding the fax provisions of the TCPA, that the parties challenging the statute in the case before it: "had not disputed that unsolicited commercial fax solicitations are responsible for the bulk of advertising cost shifting. Thus, banning them is a reasonable means to achieve Congress's goal of reducing cost shifting. The First Amendment does not require Congress to forgo addressing the problem at all unless it completely eliminates cost shifting"(*Destination Ventures, Ltd. v. FCC,* 46 F.3d 54, 56 [9th Cir.1995], citing *United States v. Edge Broadcasting Co.,* 509 U.S. 418, 113 S.Ct. 2696, 125 L.Ed.2d 345 [1993] ).

**889 The Eighth Circuit expressed its agreement with this analysis as well (*Nixon,* 323 F.3d at 658).

The fact that advertising faxes constitute the bulk of unsolicited faxes also distinguishes the present case from *City of Cincinnati v. Discovery Network, Inc.,* 507 U.S. 410, 113 S.Ct. 1505, 123 L.Ed.2d 99 [1993], which defendants argue mandates a finding that the TCPA is unconstitutional. The ordinance at issue in *Discovery Network* would have removed roughly 60 of the estimated 2,000 newsracks in the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



4 Misc.3d 4                                                                  Page 7

4 Misc.3d 4, 779 N.Y.S.2d 882, 2004 N.Y. Slip Op. 24131
(Cite as: 4 Misc.3d 4)

city of Cincinnati, and thus could not by any means be said to materially advance the city's goals of improving esthetics and reducing sidewalk clutter. In the arena of unsolicited faxes, by contrast, all evidence to date indicates that a ban on advertising faxes in fact materially advances the cost-shifting and property interests cited by Congress, and no evidence has yet emerged of an onslaught of unsolicited non-advertising faxes, jokes, surveys, *13 free give-aways or political campaign faxes, that would cause the TCPA's ban on unsolicited advertisements be so insignificant as to render the statute unconstitutional.

Finally, the TCPA fax provisions are not more extensive than necessary to advance the interests at stake, in that they are a "reasonable fit" with the legislative end of preventing cost-shifting and preemption of equipment use (see generally Board of Trustees of State Univ. of N.Y. v. Fox, 492 U.S. 469, 480, 109 S.Ct. 3028, 106 L.Ed.2d 388 [1989] ). Plaintiffs in both actions have "demonstrate[d] that the harms [they] recite[ ] are real and that [the] restriction will in fact alleviate them to a material degree"(Florida Bar, 515 U.S. at 626, 115 S.Ct. 2371, quoting Edenfield, 507 U.S. at 770-771, 113 S.Ct. 1792). This is all that the First Amendment requires.

Nor is there any requirement in the Supreme Court's most recent holdings on this subject that the least restrictive means of regulation be determined ( Nixon, 323 F.3d at 658-659). The Supreme Court stated in 2001 in Lorillard that "We have made it clear that 'the least restrictive means' is not the standard; instead, the case law requires a reasonable fit between the legislature's ends and the means chosen to accomplish those ends, ... a means narrowly tailored to achieve the desired objective" ( 533 U.S. at 556, 121 S.Ct. 2404 [internal quotations omitted] ). It subsequently reaffirmed this approach in Western States, 535 U.S. 357, 122 S.Ct. 1497, 152 L.Ed.2d 563. In analyzing its recent jurisprudence in Western States, the Court noted that there were substantially (as opposed to somewhat) less restrictive alternatives to the legislation at issue in those cases (as in Western States itself) (see535 U.S. at 371-372, 122 S.Ct. 1497). Many of these available means were not

speech-related at all, while the regulations at issue in all of the prior cases completely foreclosed the speech involved.

Thus, the Court's caveat in Fox, 492 U.S. at 480, 109 S.Ct. 3028 that "almost all of the restrictions disallowed under Central Hudson's [final] prong have been substantially excessive, disregarding far less restrictive and more precise means," continues to apply to the Court's more recent rulings, and the mere existence of some less restrictive means of advancing the interests at stake will not invalidate the means that Congress chose (Fox, 492 U.S. at 479, 109 S.Ct. 3028).

In the present cases, defendants suggest that Congress could have enacted a less restrictive statute, offering as a model New York General Business Law § 396-aa (which prohibits commercial faxes only at certain times or above certain lengths), or that Congress might have mandated creation of a "do not fax" *14 list, or even left the industry to self-regulation, instead of banning**890 unsolicited commercial faxing altogether. However, it is far from obvious that these measures would have effectively or even more precisely addressed the interests Congress identified in enacting the legislation. They do not address the invasion of fax owners' property interests as directly or precisely as does the TCPA. Furthermore, although banned from using fax transmission, advertisers have a myriad of other possibilities for disseminating their messages. The means Congress chose are a "reasonable fit" with the end sought and do not offend the First Amendment (Lorillard, 533 U.S. at 556, 121 S.Ct. 2404).

Plaintiffs in both actions established defendants violated the TCPA by transmitting an unsolicited advertising fax to each plaintiff's fax machine. (We note that neither defendant in Action No. 1 raised an issue that it was an improper defendant although Fax.com sent the fax on behalf of Enine, Inc.) Moreover, although it was not the actual advertiser, defendant Fax.com, Inc. has been cited in a Federal Communications Commission enforcement proceeding as having the requisite "high degree of involvement in the unlawful activity [of transmitting faxes in violation of the TCPA]" to hold it liable

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



4 Misc.3d 4, 779 N.Y.S.2d 882, 2004 N.Y. Slip Op. 24131
**(Cite as: 4 Misc.3d 4)**

under the TCPA [*Kaufman v. ACS Systems, Inc.,* 110 Cal.App.4th 886, 911, 2 Cal.Rptr.3d 296 (2003) ].

Both actions must be remanded to the courts below to determine damages, including whether the violations were willful or knowing within the meaning of 47 USC § 227(b)(3) (*see generally Texas v. American Blastfax, Inc.,* 164 F.Supp.2d 892 [2001]; *Kaplan v. First City Mtge.,* 183 Misc.2d 24, 701 N.Y.S.2d 859 [Rochester City Court 1999] ). The Federal District Court in *American Blastfax,* construing "willful or knowing" in the context of the TCPA, noted in that case: "The Federal Communications Commission has interpreted 'willful or knowing' under the Telecommunications Act (of which the TCPA is a part), as not requiring bad faith, but only that the person have reason to know, or should have known, that his conduct would violate the statute ... The Court finds this is the proper standard for a finding of willful or knowing conduct under the recipient's treble damages provision" (164 F.Supp.2d at 899 [citation omitted]; *see also In re: Intercambio, Inc.,* 3 FCC Rcd. 7247, 1988 WL 486783).

The *Kaplan* Court further noted that imposition of treble damages is discretionary (47 USC § 227[b][3] ).

**\*15** The nature of the defendants' violations, although argued upon the motions below, was not discussed upon this appeal, and there is not enough evidence in the record for this court to determine whether the conduct involved here rises to the level of "willful or knowing" on the part of any of the defendants. Accordingly, the matters are remanded to the respective courts below for a finding as to the nature of the violation and an assessment of damages in accordance therewith (*see*CPLR 3212[c] ).

Finally we note that the question of whether the TCPA has preempted General Business Law § 396-aa in whole or in part is not directly at issue in either lawsuit. Therefore, we do not pass upon it.

N.Y.Sup.App.Term,2004.
Rudgayzer & Gratt v. Enine, Inc.

4 Misc.3d 4, 779 N.Y.S.2d 882, 2004 N.Y. Slip Op. 24131

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**EXHIBIT C**

***Schumacher Fin. Servs., Inc. v. Steckelberg***, 2003 TCPA Rep. 1236 (Mo. Cir. Oct. 14, 2003)

## IN THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS STATE OF MISSOURI

### SCHUMACHER FINANCIAL SERVICES, INC., Plaintiff,

**v.**

### DAVID STECKELBERG, Defendant

**Cause No.: 03AC-008706 Y CV**

**Division 39**

**Oct 14, 2003**

NOTICE: The rules of some jurisdictions may impose limitations on the use of materials not designated for publication in certain officially sanctioned reporters. Consult the rules of the applicable jurisdiction regarding use and citation of this opinion.

**RESULT:**

Defendant's motion to dismiss denied.

**SYNOPSIS:**

Defendant sought to dismiss plaintiff's claims under the TCPA for an unsolicited fax sent into Missouri, arguing that the Missouri court lacked personal jurisdiction over defendant, and that the fax in question was not covered by the state. The court held that sending a facsimile advertisement into Missouri satisfied the "transaction of any business" and the "tortious act" prongs of the Missouri long arm statute so that the Missouri court has specific jurisdiction over the out-of-state sender of the fax for a cause of action under the TCPA. The court also found that the "offer of a free report" in the fax was material advertising the commercial availability of any property, goods, or services so as to be subject to the TCPA.

**SUBSEQUENT HISTORY:**

**PRIOR HISTORY:**

**CITED BY:**

*Vertex Chem. Corp. v. Asphalt Paving Equip.*, LLC, 2004 TCPA Rep. 1263 (Mo. Cir., Feb. 17, 2004).

*Marquis Fin. Corp. v. Salter*, 2004 TCPA Rep. 1332 (Mo. Cir., June 3, 2004).

*Psych. Assoc. v. Whittemore Corp.*, 2005 TCPA Rep. 1371 (Mo., Cir. Jul 22, 2005).

**APPEARANCES:**

Max Margulis, Margulis Law Group, Chesterfield Missouri for Plaintiff.

David Steckelberg, *pro se* for defendant.

**JUDGES:**

Judge Patrick Clifford

**HOLDINGS:**

[☞1] **Personal Jurisdiction**

A TCPA cause of action arises directly out of the contact Defendant directed to Plaintiff

[☞2] **Unsolicited Advertisement**

The statute does not require that a price must be associated with the products, goods, or services mentioned – only that the fax advertise their "commercial availability" or their "quality."

[☞3] **Unsolicited Advertisement**

To be subject to the TCPA, a fax need only make known to, or notify, someone about the commercial availability or the quality of any property, goods or services.

[☞4] **Unsolicited Advertisement**

"Commercial" is defined by Webster's to mean: "1) of or relating to commerce; engaged in commerce; involved in work that is intended for the mass market." It is clear from the fax that the report being mentioned is intended for the mass market.

[☞5] **Unsolicited Advertisement**

Whether a fee is or is not charged for the property, goods, or services mentioned in an unsolicited fax, is irrelevant for purposes of the TCPA.

**OPINION:**

ORDER

[*1] This matter came before the Court for argument on October 14, 2003 on Defendant's Motion to Dismiss. The parties have filed memoranda of law and the Court has heard the arguments of both parties.

Plaintiff brought suit against Defendant under the private right of action provided in 47 U.S.C. § 227(b), the Telephone Consumer Protection Act, ("TCPA"). Plaintiff alleges that Defendant sent one [FN1] facsimile containing an unsolicited advertisement to Plaintiff's fax machine in Missouri, and that this fax violates the TCPA and subjects Defendant to the personal jurisdiction of the Missouri Courts.

[FN1] Plaintiff alleges only one fax was sent to his fax machine, and the Court assumes this is true for the purposes of this motion. However, were the Court inclined to find a single fax transmission sent into this state was insufficient to satisfy personal jurisdiction, Plaintiff would be entitled as a matter of law to discovery to determine the extent of Defendant's other contacts with Missouri. *Shouse v. RFB Construction Co., Inc.*, 10 S.W.3d 189, 194 (Mo. App. W.D. 1999) ("Of course, the parties have the right to conduct discovery to demonstrate whether [defendant] has such substantial business or contacts.")

**1. Standard of Review**

On a motion to dismiss, "we accept as true the facts properly pleaded, giving the averments a [*2] liberal construction, and making those reasonable inferences fairly deducible from the facts stated." *Concerned Parents v. Caruthersville School Dist. 18*, 548 S.W.2d 554, 558 (Mo. 1977). The facts as pleaded, claim that Defendant sent the fax in question to Plaintiff on or about July 11, 2002. These facts are assumed true for the purposes of this motion. A Motion to dismiss tests only the sufficiency of the pleadings.

**2. Standard for asserting personal jurisdiction**

When a defendant asserts lack of personal jurisdiction in a motion to dismiss, a plaintiff bears only the minimal burden of establishing a *prima facie* case that (1) the suit arose out of the activities enumerated in the Missouri long-arm statute, Section 506.500 RSMo.; and (2) the defendant has sufficient contacts with Missouri to satisfy due process requirements. *Schilling v. Human Support Svcs.*, 978 S.W.2d 368, 370-71 (Mo. App. E.D. 1998). "The basic due process test is whether the defendant has 'purposefully availed itself of the privilege of conducting activities within the forum state.'" *Farris v. Boyke*, 936 S.W.2d 197 (Mo. App. S.D. 1996) citing *Elaine K. v Augusta Hotel Assocs. Ltd. Partnership*, 850 S.W.2d 376, 378 (Mo. App. E.D. 1993).

Section 506.500, RSMo 1994, states:

1. Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts:

(1) The transaction of any business within this state;

(2) The making of any contract within this state;

(3) The commission of a tortious act within this state;

(4) The ownership, use, or possession of any real estate situated in this state;

[*3] (5) The contracting to insure any person, property or risk located within this state at the time of contracting;

(6) Engaging in an act of sexual intercourse within this state with the mother of a child on or near the probable period of conception of that child.

Jurisdiction is proper under due process where "the defendant has 'purposely directed' his activities at residents of the forum, *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984), and the litigation results from alleged injuries that 'arise out of or relate to' those activities, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-473 (1985).

The most recent Missouri case on long arm jurisdiction is *Products Plus Inc. v. Clean Green, Inc.* decided August 13, 2003 (Case No. 25352 S.D.) which explained that:

[I]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are " purposefully directed" toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.

Missouri's long arm statute is intended to reach "to the fullest extent permissible under the due process clause of the Fourteenth Amendment." *State ex rel. Deere & Co. v. Pinnell*, 454 S.W.2d 889 (Mo. banc 1970). Missouri courts have been explicit that the exercise of long arm jurisdiction "is not susceptible to mechanical application; rather the facts of each case must be weighed to determine whether requisite affiliating circumstances are present." *State ex rel. Sperandio v. Clymer*, 581 S.W.2d 377, 382 (Mo. banc 1979).

The issue of whether faxes or telemarketing calls sent or made to Missouri residents will subject the sender to the personal jurisdiction of Missouri courts under the TCPA is not new to St. Louis courts. *See R.F. Schraut Heating & Cooling, Inc. v. Maio Success Sys., Inc.*, 2001 TCPA Rep. [*4] 1038, No. 01AC11568 (Div. 39, Mo. Cir. Ct. Aug. 14, 2001); *Brentwood Travel, Inc. v. Lancer, Ltd.*, 2001 TCPA Rep. 1018, 01CC-000042 (Div. 45, Mo. Cir. Ct. Feb. 21, 2001) (unsolicited faxes); *Margulis v. VoicePower Telecom., Inc.*, 2001 TCPA Rep. 1023, . 00AC-013017 (Div. 39, Mo. Cir. Ct. March 22, 2001) (telemarketing calls). Defendant has presented nothing to challenge the analysis presented in those cases.

Defendant relies on *FDIC v. Malmo*, 939 F.2d 535 (8th Cir. 1991) and *CPC-Rexcell, Inc. v. La Corona Foods, Inc.*, 912 F.2d 241 (8th Cir. 1990), in support of his motion. These cases however are distinguishable. [☞1] In the case at bar, the TCPA cause of action arises *directly* out of the contact Defendant directed to Plaintiff – much like the typical law school example of a of shooting a gun across state lines. A Missouri court will have personal jurisdiction over the shooter for a cause of action arising out of the gunshot across the border, but not for some other cause of action such as a contract dispute. *FDIC* was a legal malpractice action against an out of state attorney

who solicited a client in Missouri via a letter sent into Missouri. The malpractice cause of action did not arise out of the letter itself. *CPC-Rexcell* is similarly distinguishable in that the cause of action was not based on an injury arising from the communications themselves.

### 3. Is the fax covered by the statute?

It is not disputed that Defendant sent the fax at issue to Plaintiff's fax machine without prior express permission or invitation. In essence, the only question before the Court is whether or not the fax at issue is an "unsolicited advertisement" as defined by the TCPA. "Unsolicited advertisement" is defined as:

any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission.

[*5] 47 U.S.C. § 227(a)(4). Defendant claims that the fax at issue as "an offer of a 'free report'" and argues that "'[c]ommercial availability' also implies that a cost or price would be associated with the offer."

The Court does not agree with Defendant's restrictive interpretation of "commercial availability." [☞2] The statute does not require that a price must be associated with the products, goods, or services mentioned – only that the fax advertise their "commercial availability" or their "quality." Applying the plain language of the term "advertise" (defined by Webster's dictionary as "to make something known; to notify") [☞3] the fax need only make known to, or notify, someone about the commercial availability or the quality of any property, goods or services. [☞4] "Commercial" is defined by Webster's to mean: "1) of or relating to commerce; engaged in commerce; involved in work that is intended for the mass market." *Id.* It is clear from the fax that the report being mentioned is intended for the mass market.

It is hard to miss the numerous solicitations any professional or businessperson receives for similar industry reports in business areas such as tax planning, marketing assistance, and general business advice. While many are fee-based, some are also offered at no charge as in the fax at issue here. [☞5] The Court concludes that whether a fee is or is not charged is irrelevant for purposes of the TCPA. Indeed, a report such as this may be offered for free in one location on one day, and then the very same report may be offered for a fee in a different location on a different date, much like a new hardware store may give away items such as a garden hose during a grand opening sale, and then charge for the same garden hose the next day. This does not change the character of the item and make it a "product" on one day, and not on the other.

Further support for this conclusion is found in the fact that the FCC, which is the administrative [*6] agency with authority to implement the TCPA, has interpreted the TCPA's definition of materials "advertising the commercial availability or quality of any property, goods, or services" as including materials offering items free of charge. In this regard, the FCC aptly noted:

The TCPA's definition does not require a sale to be made [by the solicitation] in order for the message to be considered an advertisement. Offers for free goods or services that are part of an overall marketing campaign to sell property, goods, or services constitute "advertising the commercial availability or quality of any property, goods, or services."

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 68 FR 44144-01 at ¶ 140. The interpretation of any statute by the administrative agency overseeing that statute is due great deference. *Griggs v. Duke Power Co.,* 401 U.S. 424, 434 (1971); *Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 844 (1984). "The court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding." *Id.,* 467 U.S. at 843, n 11 (additional

citations omitted). [FN2]

> [FN2] For a discussion of the policy of deference to agency construction, see *Chevron and Canons of Statutory Construction*, 58 Geo. Wash. L. Rev. 829 (1990).

The fax in this case does "notify" the recipients about both the existence of the report and Defendant's business. Thus the question is reduced to whether the report or any portion thereof constitutes "property, goods or services." The Court holds that the report is a product offered by Defendant.

A very similar question with respect to the TCPA has been decided by this very Court. In *Micro Engineering, Inc. v. St. Louis Assoc. of Credit Management, Inc.*, 2002 TCPA Rep. 1080, 02AC-0082338 (Mo. Cir. Aug 13, 2002), this Court held that a facsimile advertising a "free" seminar was in fact an "unsolicited advertisement" under the TCPA. "These faxes clearly do 'announce' the [**7**] luncheons Defendant offers. It is clear that such professional functions are offered as a service, albeit ostensibly a free service." *Id., at 4*. Both *Micro Engineering, supra*, and *Harjoe v. Colonial Life & Accident Ins. Co.*, 2002 TCPA Rep. 1065, 02AC-001983 (Div. 45, Mo. Cir. Ct. Aug. 29, 2002) noted the appropriateness of a remedial construction of the TCPA:

While a court can not adopt a construction of a statue that is contrary to its plain language, the TCPA is a remedial consumer protection statute and "should be liberally construed and interpreted (when that is possible) in a manner tending to discourage attempted evasions by wrongdoers." *Scarborough v. Atlantic Coast Line R. Co.*, 178 F.2d 253, 258 (4th Cir. 1950). Exemptions from provisions of remedial statutes "are to be construed narrowly to limit exemption eligibility." *Hogar v. Suarez-Medina*, 36 F3d 177, 182 (1st Cir 1994). *See, e.g.*, the very first paragraph of the Missouri Revised Statues, which requires "all acts of the general assembly, or laws, shall be liberally construed, so as to effectuate the true intent and meaning thereof." RSMo.§ 1.010. Defendant's fax is an advertisement of Defendant's services that the "true intent and meaning" of the TCPA addresses.

Micro Engineering, at *4. These canons of construction reinforce the inescapable conclusion that the fax at issue in this case lies within the purview of the statute.

## CONCLUSION

The Petition sets out that Defendant directed his activities at a telephone number that is in the 314 area code, which serves only Missouri. Defendant is in complete control of what forums he is exposed to in a TCPA action by his own choice of which states he targets with his advertising transmissions. He directed his activities at the consumers in Missouri. He clearly should expect to be subject to the jurisdiction of the Missouri courts based on that contact. Accordingly, sending an unsolicited fax advertisement into Missouri in violation of the prohibitions of the TCPA satisfies both the "transacting any business" and "tortious act in this state" prongs of the Missouri long arm statute and establishes personal jurisdiction in this state that is consistent with minimum contacts and due process under the Fourteenth Amendment.

[**8**] Defendant has "transacted business" in this state by his advertising contact, and the cause of action has arisen out of that specific contact, giving rise to specific jurisdiction. Independently, Plaintiff has alleged that Defendant engaged in a tortious act with actionable consequences in this state. Plaintiff has thus made a *prima facie* case for personal jurisdiction and the court holds that the fax in question is subject to the provisions of the TCPA. Defendant's Motion is DENIED on both grounds raised.

IT IS SO ORDERED.

This the 14th day of October, 2003.

/s/ Patrick Clifford

Judge Patrick Clifford, Division 39

# # #

Printed on Friday, February 08, 2008.

Copyright © 2007. No claim to text of U.S. Government works. This file is property of TCPALaw.com. Acquisition and use of this document is subject to subscriber agreement. All rights reserved. Contact subscriptions@TCPALaw.com for more information.

**EXHIBIT D**

*Micro Eng. v. St. Louis Ass'n of Credit Mgmt., Inc.*, 2002 TCPA Rep. 1080 (Mo. Cir. Aug. 13, 2002). | Page: 1

IN THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS
21ST JUDICIAL CIRCUIT, STATE OF MISSOURI

**FILED**

AUG 1 3 2002

JOAN M. GILMER
CIRCUIT CLERK, ST. LOUIS COUNTY

MICRO ENGINEERING, INC., ET AL.,

Plaintiffs,

vs.

~~NACM ST. LOUIS GATEWAY REGION,~~
ST. LOUIS ASSOCIATION OF CREDIT
MANAGEMENT, INC.,

Defendant.

Cause No. 02AC-008238 X CV

Div. 39

## ORDER

This matter came before the Court on August 13, 2002 on Defendant's Motion to Dismiss or in the alternative, Motion to Strike. Plaintiffs filed suit under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, alleging they were sent unsolicited advertisements via facsimile by Defendant. Defendant argues that the TCPA provisions restricting unsolicited facsimile advertisements violates First Amendment principles of free speech, citing *Missouri v. Am Blast Fax, Inc.*, 196 F. Supp. 2d 920 (E.D. Mo. 2002) (hereinafter "ABF").[1] Defendant also argues that two of the alleged faxes do not constitute "unsolicited advertisements" as defined by the statute.

As a preliminary matter, this Court is not bound by decisions of federal trial courts. *Reynolds v. Diamond Foods & Poultry, Inc.*, -- S.W.3d -- , note 4, No. SC84433 (Mo. Banc, July 23, 2002) (overruling *Fox v. McDonnell Douglas Corp.*, 890 S.W.2d 408, 410 (Mo. App. 1995)). This Court has previously discussed the *ABF* decision, and found its analysis unpersuasive. *Clean Carton Co., Inc. v. Constellation 3D, Inc.*, (order denying motion to dismiss based on *Missouri v. ABF*), No.

---

1. That decision has been appealed to the Eighth Circuit Court of Appeals by both Attorney General Nixon and the U.S. Department of Justice.

-1-

Obtained from
**TCPALAW.COM**
The leading source for TCPA legal research

Copyright © 2008. No claim to text of U.S. Government works. This file is property of TCPALaw.com. Acquisition and use of this document is subject to subscriber agreement. All rights reserved. Contact subscriptions@TCPALaw.com for more information.

*Micro Eng. v. St. Louis Ass'n of Credit Mgmt., Inc.*, 2002 TCPA Rep. 1080 (Mo. Cir. Aug. 13, 2002).  |  Page: 2

01AC-029591 (Div 39) (Mo. Cir. Ct., June 25, 2002);. Nothing has changed in that regard. Rather than merely follow the ABF decision as suggested by Defendant, the weight of persuasive contra authority requires an independent assessment of the constitutional question.

This Court has had the opportunity to address this precise question several times. Clean Carton Co., Inc. v. Constellation 3D, Inc., (order denying motion to dismiss based on Missouri v. ABF), No. 01AC-029591 (Div 39) (Mo. Cir. Ct., June 25, 2002); Rhone v. Olympic Comm., Inc., No.: 01AC-002887 (Div 39) (Mo. Cir. May 14, 2002); Brentwood Travel Serv., Inc. v. Ewing, No 01AC-022171 (Div. 39) (Mo. Cir. Ct., Apr. 30, 2002) Zeid v. The Reding Law Firm, P.C., No. 01AC-013005 (Div. 39) Cir. Ct. Mo., March 19, 2002); Coleman v. ABF, No. 00AC-005196 (Div. 32) (Mo. Cir. Ct. Oct. 12, 2000). Those previous orders set out ample analysis of this question, and nothing has be presented by this defendant to cause the Court to reach a different conclusion this time. "Although it is common to place the burden upon the Government to justify impingements on First Amendment interests, it is the obligation of the person desiring to engage in assertedly expressive conduct to demonstrate that the First Amendment even applies." Clark v. Community for Creative Non-violence, 468 U.S. 288, note 5 (1984) (overnight camping prohibition not a First Amendment violation). Defendant has not met that obligation. Using another person's fax machine, paper, and toner without their permission is theft and a trespass – not a speech right. There is no speech restriction here that requires First Amendment scrutiny.

Defendant's argument that the TCPA is an impermissible restriction on free speech can only be based on a perceived right to use another person's fax machine, paper, and toner, all without permission of the property owner. To make this a speech case, is to insist on a right to use someone else's paper, ink, and printing press to print your message, all without the permission of the owner of that printing press. "The First Amendment is not a license to trespass, to steal, or to intrude by

-2-

**Obtained from**
**TCPALAW.COM**
The leading source for TCPA legal research

Copyright © 2008. No claim to text of U.S. Government works. This file is property of TCPALaw.com. Acquisition and use of this document is subject to subscriber agreement. All rights reserved. Contact subscriptions@TCPALaw.com for more information.

*Micro Eng. v. St. Louis Ass'n of Credit Mgmt., Inc.*, 2002 TCPA Rep. 1080 (Mo. Cir. Aug. 13, 2002). | Page: 3

electronic means into the precincts of another person's home or office." Dietmann v. Time, Inc., 449 F.2d 245, 249 (9th Cir. 1971); "[I]t is untenable that conduct such as vandalism is protected by the First Amendment merely because those engaged in such conduct intend thereby to express an idea." In re Michael M., 86 Cal.App.4th 718, 729 citing Texas v. Johnson, (1989) 491 U.S. 397, 404; See, also, State v. Mortimer, 641 A.2d 257 (N.J. 1994) (free speech protection was lost when defendants delivered their message through defacement of private property); State v. Nye, 943 P.2d 96, 101 (1997) (no right to put bumper stickers on other people's cars without their permission).

"It has never been deemed an abridgement of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed." Giboney v. Empire Storage & Ice Co., 336 U.S. 490, 507 (1949). Sending unsolicited facsimile advertisements without the recipient's permission is simply not a form of conduct protected by the First Amendment, any more than graffiti on someone else's property is protected speech.

### Definition of Unsolicited Advertisement

Defendant next argues that two of the faxes at issue do not constitute an "unsolicited advertisement" as defined by the statute. That definition is "any material advertising the commercial availability or quality of any property, goods, or services." 47 U.S.C. § 227(a)(4). Defendant argues that "[a] facsimile which does not attempt to sell any property, goods or services and only advises a party of an opportunity in which they may partake is not an "advertisement" as defined under the TCPA." Def. Mtn. at ¶ 16. This interpretation misreads the statute. The statute does not require that the property, goods or services being mentioned must be "for sale" as Defendant' argues.

While a court can not adopt a construction of a statue that is contrary to its plain language, the TCPA is a remedial consumer protection statute and "should be liberally construed and

**Obtained from**
**TCPALAW.COM**
The leading source for TCPA legal research

Copyright © 2008. No claim to text of U.S. Government works. This file is property of TCPALaw.com. Acquisition and use of this document is subject to subscriber agreement. All rights reserved. Contact subscriptions@TCPALaw.com for more information.

*Micro Eng. v. St. Louis Ass'n of Credit Mgmt., Inc.*, 2002 TCPA Rep. 1080 (Mo. Cir. Aug. 13, 2002). | Page: 4

interpreted (when that is possible) in a manner tending to discourage attempted evasions by wrongdoers." Scarborough v. Atlantic Coast Line R. Co., 178 F.2d 253, 258 (4th Cir. 1950). Exemptions from provisions of remedial statutes "are to be construed narrowly to limit exemption eligibility." Hogar v. Suarez-Medina, 36 F3d 177, 182 (1st Cir 1994). See, e.g., the very first paragraph of the Missouri Revised Statues, which requires "all acts of the general assembly, or laws, shall be liberally construed, so as to effectuate the true intent and meaning thereof." RSMo.§ 1.010. Defendant's fax is an advertisement of Defendant's services that the "true intent and meaning" of the TCPA addresses.

So is this material "advertising?" Webster's dictionary defines "advertise" as "to make something known to : notify." This is a pristine example of where the application of the time honored "duck test" is appropriate - "If it walks like a duck, quacks like a duck, and looks like a duck, then it's a duck." BMC Industries, Inc. v. Barth Industries, Inc., 160 F.3d 1322, 1337 (11th Cir., 1998). These faxes clearly do "announce" the luncheons Defendant offers. It is clear that such professional functions are offered as a service, albeit ostensibly a free service. It is clear also, that the luncheon consists of a meal. Again, ostensibly free, but "property, goods or service" clearly encompasses the concept of a meal. The fax plainly states that NACM provides services to the "credit and financial professional." Indeed, these types of luncheon seminars are themselves a service. Also prominently advertised on the fax is Defendant's web site. This web site is a service. Harjoe v. Colonial Life & Accident Ins. Co., No 01AC-11555, slop op. at 3, (Div. 35) (Mo. Cir. Ct., May 2, 2002 currently before Div 45 on Motion for Trial De Novo of defendant ).

## CONCLUSION

Defendant's motion to Dismiss and Motion to Strike is DENIED.

IT IS SO ORDERED.

-4-


Obtained from
**TCPALAW.COM**
The leading source for TCPA legal research

Copyright © 2008. No claim to text of U.S. Government works. This file is property of TCPALaw.com. Acquisition and use of this document is subject to subscriber agreement. All rights reserved. Contact subscriptions@TCPALaw.com for more information.

*Micro Eng. v. St. Louis Ass'n of Credit Mgmt., Inc.*, 2002 TCPA Rep. 1080 (Mo. Cir. Aug. 13, 2002).  |  Page: 5

This the *13* day of *August* , 2002.

**Judge Patrick Clifford, Division 39**

-5-

Obtained from
**TCPALAW.COM**
The leading source for TCPA legal research

Copyright © 2008.  No claim to text of U.S. Government works. This file is property of TCPALaw.com. Acquisition and use of this document is subject to subscriber agreement. All rights reserved. Contact subscriptions@TCPALaw.com for more information.

**EXHIBIT E**

*Harjoe v. Colonial Life & Accident Ins. Co.*, **2002 TCPA Rep. 1065 (Mo. Cir. Aug. 29, 2002)**

## IN THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS
## STATE OF MISSOURI

DAVID L. HARJOE, Plaintiff,

v.

COLONIAL LIFE & ACCIDENT INSURANCE COMPANY, Defendant

### Cause No.:02 CC - 001983

### Division 45

### Decided August 29, 2002

NOTICE: The rules of some jurisdictions may impose limitations on the use of materials not designated for publication in certain officially sanctioned reporters. Consult the rules of the applicable jurisdiction regarding use and citation of this opinion.

**RESULT:**

Plaintiff's motion for summary judgment granted and defendant's motion for summary judgment denied.

**SYNOPSIS:**

On a trial de novo after a decision in favor of plaintiff in the court below, the parties each moved for summary judgment on stipulated facts. The court held that there is no requirement that to be covered by the TCPA, that the goods or services advertised in a fax actually must be for sale to the recipient. The court also held that an Internet website, listed on the fax, is a service under the TCPA. Summary judgment was granted to plaintiff.

**SUBSEQUENT HISTORY:**

**PRIOR HISTORY:**

*Harjoe v. Colonial Life & Accident Ins. Co.*, 2002 TCPA Rep. 1064 (Mo. Cir. May 2, 2002)

**APPEARANCES:**

Max Margulis, Margulis Law Group, Chesterfield Missouri for plaintiff.

Robert J Golterman, Lewis Rice and Fingersh LC, St. Louis, Missouri for defendant.

**JUDGES:**

Sidney Chaffin, Judge.

**HOLDINGS:**

[☞1] **Unsolicited Advertisement**

There is no requirement that to be covered by the statute, that the goods or services advertised actually must be for sale to the recipient.

[☞2] **Remedial/Penal nature**

An interpretation that the goods or services must be for sale to the recipient is overly strict – especially considering the remedial nature of the statute.

[☞3] **Unsolicited Advertisement**

To fall within the ambit of the TCPA, an unsolicited fax need only notify or announce to a recipient, the commercial availability of any property, goods, or services, or

make qualitative statements about them.

**[☞4] Unsolicited Advertisement**

An Internet website, listed on the fax, is also a service within the TCPA.

**OPINION:**

ORDER AND JUDGMENT

**[*1]** This matter came before the Court on August 29, 2002 on Plaintiff's Motion to for Summary Judgment and Defendant's cross Motion for Summary Judgment. This is an action originally brought by Plaintiff in the Associate Circuit Division, against Colonial Life & Accident Insurance Company ("Colonial"), alleging transmission of an unsolicited advertisement via facsimile in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Judgment was rendered against Defendant on May 2, 2002 by Division 35, and Defendant sought a trial de novo in this Court.

The parties have stipulated to a set of facts which establish the relevant elements of the cause of action. At all times relevant, Plaintiff had telephone facsimile service at the facsimile telephone number of (314) 878-7277. On March 28, 2000 Defendant sent a facsimile transmission to and received by Plaintiff at (314) 878-7277, and Defendant did not obtain prior express invitation or permission to send the fax to Plaintiff. Defendant knew it was sending the fax, and was fully aware of the content of the fax. The fax at issue was not sent as a result of any accident or mistaken act.

The Missouri Supreme Court reaffirmed the standard under which a summary judgment **[*2]** should be entered in favor of the moving party in a lawsuit, in *ITT Commercial Finance Corp. v. Mid-American Marine Supply Corp.*, 854 S.W.2d 371, (Mo. banc 1993). In so defining, the Court stated:

If the non-movant cannot contradict a showing of the movant, *judgment is properly entered against the non-movant because the movant has already established a right to judgment as a matter of law.*

*ITT*, 854 S.W.2d at 381 (emphasis added). Further, a defendant cannot rely on pleadings of ultimate facts when confronted with a Motion for Summary Judgment. *Snowden v. Northwest Missouri State University*, 624 S.W.2d 161, 169 (Mo.App. 1981). In such a case, summary judgment, if appropriate, will be entered against the non-moving party. Rule 74.04(c)(3); *Charity v. City of Haiti Heights*, 563 S.W.2d 72, 75 (Mo. banc 1978).

**Elements of the Telephone Consumer Protection Act.**

The elements of an unsolicited fax advertisement claim under the TCPA are that a person 1) uses a telephone facsimile machine, computer, or other device 2) to send an unsolicited advertisement. The stipulated facts establish nearly all the elements of Plaintiff's claim, with the only question remaining being whether the fax at issue contains "material advertising the commercial availability of any property goods, or services." 47 U.S.C. § 227(a)(4). Defendant describes the fax as merely "announcing employment opportunities" while Plaintiff argues that the fax advertises Defendant's company and the services it offers, such as its website. Plaintiff also argues that the fax is a qualitative statement about Defendant's services. The only question is whether or not the facsimile contains an "unsolicited advertisement" subject to the statute.

**Definition of "unsolicited advertisement"**

The statutory definition of "unsolicited advertisement" at 47 U.S.C. § 227(a)(4) is:

(4) The term ``unsolicited advertisement'' means any material advertising the **[*3]** commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission.

Whether the fax at issue meets this definition is ultimately one of statutory

construction. With any question of construction, the nature of the statute plays a role in that construction. While criminal statutes invoke the rule of lenity, remedial statues "should be liberally construed and interpreted (when that is possible) in a manner tending to discourage attempted evasions by wrongdoers." *Scarborough v. Atlantic Coast Line R. Co.*, 178 F.2d 253, 258 (4th Cir. 1950). Exemptions from provisions of remedial statutes "are to be construed narrowly to limit exemption eligibility." *Hogar v. Suarez-Medina*, 36 F3d 177, 182 (1st Cir 1994). *See, e.g.*, the very first paragraph of the Missouri Revised Statues, which requires "all acts of the general assembly, or laws, shall be liberally construed, so as to effectuate the true intent and meaning thereof." RSMo.§ 1.010.

Defendant argues that nothing is being offered "for sale" by the faxes. [☞1] But there is no requirement that to be covered by the statute, that the goods or services advertised actually must be for sale to the recipient. They only have to be "advertised." Indeed, we commonly see advertisements for "free" goods and services, often given away at no charge to secure customer goodwill or brand recognition, as a loss leader to generate sales of other goods or services, or just to obtain contact information for potential new customers. Webster's dictionary defines "advertise" as "to make something known to : notify" and this is the proper construction of that term as used in the TCPA. [☞2] Defendant's interpretation that the goods or services must be for sale to the recipient is overly strict - especially considering the remedial nature of the statute. [☞3] To fall within the ambit of the TCPA, an unsolicited fax need only notify or announce to a recipient, the commercial availability of any property, goods, or services, or make qualitative statements about them. Defendant is clearly engaged in a commercial insurance business, and the fax in question does notify the recipient about [*4] the existence of Defendant's insurance wares and their commercial availability.

**Defendant's web site is a service.**

[☞4] The Court also agrees with Plaintiff that Defendant's Internet website, listed on the fax, is also a service within the TCPA. If Defendant's argument were correct that the referral of the reader of a fax to Defendant's web site is not an advertisement under the TCPA, **any** fax advertiser could escape the TCPA by putting all the sales pitches on a web site, and broadcast millions of faxes with merely a logo and a web site address. This type of subterfuge would permit easy evasion of the law. A foundational rule of statutory construction, construing a statute broadly for the public benefit, is "to suppress subtle inventions and evasions for continuance of the mischief." *Cummins v. Kansas City Public Service Co.*, 334 Mo. 672, 698-99 (Mo. banc 1933). In this case, the mischief is unsolicited faxes promoting the goods and services of commercial enterprises like Defendant.

CONCLUSION

Plaintiff's Motion is GRANTED. Defendant's Motion is denied. Plaintiff shall have and recover from Defendant Colonial Life & Accident Insurance Company, judgment in the amount of $ 750 plus court costs.

It is SO ORDERED, this the 29th day of August, 2002

/s/ Sidney Chaffin

Judge Sidney Chaffin

Division 45

# # #

Printed on Friday, February 08, 2008.

Copyright © 2007. No claim to text of U.S. Government works. This file is property of TCPALaw.com. Acquisition and use of this document is subject to subscriber agreement. All rights

reserved. Contact subscriptions@TCPALaw.com for more information.

**EXHIBIT F**

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| C.E. DESIGN, LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 06 CH 26834 |
| | ) | |
| LETRIX USA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This cause comes before the court on Defendant Letrix USA, Inc.'s motion to dismiss pursuant to 735 ILCS 5/2-619 and 5/2-615. The court has been fully advised of the premises herein.

This case is one of over sixty cases currently assigned to this Calendar which involve claims for violations of the Telephone Consumers Protection Act of 1991 ("TCPA"), the Illinois Consumer Fraud Act, and for common law conversion. The Plaintiffs in these cases allege that the Defendants have engaged in mass-faxing of unsolicited advertisements. The cases have been divided into Groups A, B, C, D and E. Master motions to dismiss have already been denied in connection with Groups A, B, and C. Defendant Letrix USA, Inc. ("Letrix") has chosen to file an individual motion to dismiss CE Design, Ltd.'s Complaint. The bases for dismissal raised by Letrix are identical to those previously raised in the Groups A, B, and C master motions to dismiss.

Count I – (Violation of TCPA)(§2-619)

In Count I, Plaintiff alleges that Letrix violated the Telephone Consumer Protection Act ("TCPA"), 47 USCS §227 (2004), which prohibits using any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to another telephone facsimile machine. Section 227 allows for state jurisdiction over private causes of action under the TCPA and reads as follows in pertinent part:

(3) Private right of action. A person or entity may, if otherwise permitted by the law or rules of court of a State, bring in an appropriate court of that State –
   (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
   (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
   (C) both such actions.

47 USCS §227(3) (2004).

*Private Right of Action*:

Letrix argues that Plaintiff's TCPA claim should be dismissed because the TCPA does not create a private right of action in Illinois. On the same date that Letrix filed this motion, the First District issued an opinion holding otherwise. First Capital Mortgage Corp. v. Union Federal Bank of Illinois, 2007 Ill. App. LEXIS 728 (1st Dist. June 29, 2007). In a footnote in its Reply brief, Letrix argues that this court is not required to follow First Capital because it has not been released for publication. However, First Capital was released for publication on August 9, 2007. Letrix's belief that First Capital was wrongly decided is irrelevant as First Capital is binding case law. Moreover, Letrix's argument that the TCPA does not create a private right of action in Illinois was previously soundly rejected by both Judge Donnersberger and Judge Berman in connection with the master motions to dismiss for Groups A, B, and C. Letrix's arguments are identical to those previously rejected.

*Tenth Amendment of the U.S. Constitution*:

In its Reply brief, Letrix improperly argues for the first time that the TCPA is unconstitutional because it requires States to "opt out" of the TCPA rather than "opt in" as required by the Tenth Amendment of the U.S. Constitution. This argument was previously made, and rejected, in the Group C master motion to dismiss. This argument presumes that Congress conferred exclusive jurisdiction over TCPA claims upon State courts. However, the Seventh Circuit has held, in a well-reasoned opinion, that federal courts do have jurisdiction over TCPA claims. Brill v. Countrywide Home Loans, Inc., 427 F.3d 446, 450-51 (7th Cir. 2005). The TCPA has not conferred exclusive jurisdiction over a Federal claim upon State courts and there is no violation of the Tenth Amendment.

Plaintiff has a private right of action in Illinois under the TCPA.

Count II (Conversion)(§2-615)

In Count II, Plaintiff alleges that Letrix has converted its paper, toner, fax machine memory, and employee time. Letrix argues that Plaintiff's damages are *de minimis* and Plaintiff has not alleged facts showing it had a right to immediate possession of its property or that Letrix took possession of Plaintiff's property. These arguments are identical to arguments previously made in the Groups A, B, and C master motions to dismiss previously denied by Judge Donnersberger and Judge Berman.

Conversion is the unauthorized deprivation of property from a person entitled to its possession." IOS Capital, Inc. v. Phoenix Printing, Inc., 348 Ill. App. 3d 366, 370 (4th Dist. 2004). "To prove conversion, the plaintiff must establish (1) a right in the property; (2) a right to immediate possession; (3) wrongful control by the defendant, and (4) a demand for the property." Id.

Letrix argues that Plaintiff has not alleged a right to immediate possession of it toner and paper used by the fax machine. However, the owner of a fax machine reasonably expects that the fax machine and supplies will be used for the business purposes of the owner. Plaintiff alleges that Letrix has hijacked its machine for Letrix's own advertising purposes using Plaintiffs' toner and paper without consent. Plaintiff had an immediate right of possession to its toner and paper.

Letrix also argues that Plaintiff does not allege that Letrix took physical possession of their property, but this argument is disingenuous. Once Letrix's advertisements were printed with Plaintiff's paper and toner, Plaintiff was dispossessed of the paper and toner. Plaintiff has sufficiently alleged that its property was converted.

Finally, Letrix argues that Plaintiff has sustained only *de minimis* harm from Letrix's conversion of its property. Actual damages, however, are not an element of a conversion claim. Plaintiff has sufficiently stated a claim for conversion and Letrix is not entitled to dismissal of Count II.

Count III

In Count III, Plaintiff alleges that Letrix has violated the Illinois Consumer Fraud Act ("ICFA"). Letrix argues that Plaintiff has not alleged the existence of an unfair practice under the ICFA and that Plaintiff is not a "consumer" under the ICFA. These arguments were previously raised, and rejected, in connection with the Groups A, B, and C master motions to dismiss.

Letrix first argues that Plaintiff has failed to state a claim under the ICFA because the allegations of Count III do not show conduct amounting to an unfair practice actionable under the ICFA. The ICFA allows for claims for unfair practices as well as deceptive acts. Robinson v. Toyota Motor Credit Corp., 201 Ill. 2d 403 (2002). In determining whether conduct is unfair, a court should consider: (1) whether the conduct offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers. Id. at 417-18. All three prongs do not have to be satisfied to support a finding of unfairness. Id. at 418. "'A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." Id.

Contrary to Letrix's argument, the conduct alleged by Plaintiffs does offend the public policy of both the Federal government, as evidenced by the passage of the TCPA, and of Illinois which has criminalized Defendants' conduct. Letrix argues that its conduct was not oppressive and Plaintiff has not shown substantial injury. While it is true that there is no substantial monetary injury to Plaintiff, the alleged conduct of engaging in mass faxing of unsolicited advertisements shows a pattern of unscrupulous conduct which offends the public policy of Illinois which has criminalized this conduct. Robinson is clear that it is not necessary for a plaintiff to satisfy all three criteria and that meeting even one criterion can be sufficient to show the existence of an unfair practice. In the instant case, Plaintiffs have alleged conduct which meets two of the criteria.

Letrix further argues that Plaintiff has no ICFA claim because it is not a "consumer" under the ICFA. A business, however, can bring a claim against another business where "the alleged conduct involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns." <u>Empire Home Services, Inc. v. Carpet America, Inc.</u>, 274 Ill. App. 3d 666, 669 (1st Dist. 1995). That is clearly the situation in the instant case. Plaintiff has sufficiently alleged a cause of action under the ICFA.

**IT IS HEREBY ORDERED** that Letrix's motion to dismiss is denied in its entirety.



_____
Judge Mary K. Rochford